UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                              )
                                    )
    ROBERT K. HUDDLE        )    Case No. 06-11076-SSM
                                    )    Chapter 13
        Debtor            )

**MEMORANDUM OPINION**

      Before the court are (a) the debtor's objection to a $43,287.44 deficiency claim filed by 1st Advantage Federal Credit Union ("1st Advantage") after the debtor surrendered the collateral securing its claim; and (b) 1st Advantage's motion to modify the debtor's confirmed chapter 13 plan—which stated that surrender would be in "full satisfaction"—to pay the deficiency claim. Following a hearing on July 11, 2007, the court took the objection and motion under advisement. For the reasons stated, the objection to the deficiency claim will be sustained and the motion to modify the plan will be denied.

<u>Procedural Background and Findings of Fact</u>

      Robert K. Huddle ("the debtor") filed a voluntary petition in this court on September 6, 2006, for adjustment of his debts under chapter 13 of the Bankruptcy Code. Among the creditors listed on his schedules was 1st Advantage, which had financed the purchase of both a 2003 Harley Davidson motorcycle and a 2003 Coachmen Cross Country Elite motor home ("the RV").[1] The RV loan was made on May 6, 2005, and the loan proceeds were

---

[1] The debtor's wife, from whom he is currently separated, was a co-owner of the RV and a co-signer of the note.

paid to the dealer. Approximately a year later, the debtor fell behind on the monthly payments for both the motorcycle and the RV. 1st Advantage agreed to make a new loan, evidenced by a note dated May 17, 2006, in the amount of $112,528.44, with a portion of the proceeds being used to bring the payments current on the motorcycle loan, and the remainder being used to pay off the original RV note. The new note, like the original note, was secured by the RV.

After the chapter 13 petition was filed, the trustee objected to the debtor's initial proposed plan. A modified plan, filed on November 2, 2006, was confirmed without objection on December 5, 2006. The plan requires the debtor to pay the chapter 13 trustee $1,593.00 per month for 60 months—for total plan funding of $95,580.00—and projects a dividend to unsecured creditors of 100 cents on the dollar. Under the plan, the balance due on the motorcycle loan was re-amortized over 60 months with interest at 8%.[2] With respect to the RV, the plan provided as follows:

> 3. **Secured Creditors and Motions to Value Collateral**.
> \* \* \*
> C. **Collateral to be surrendered**. Upon confirmation of the plan, or before, the debtor will surrender his or her interest in the collateral securing the claims of the following creditors in satisfaction of the secured portion of such creditors' allowed claims. To the extent that the collateral does not satisfy the claim, any timely filed deficiency claim to which the creditor is entitled shall be paid as a nonpriority unsecured claim. The order confirming the plan shall have the effect of terminating the automatic stay as to the collateral surrendered.

---

[2] The contract interest rate was 11%. The interest rate reduction and the extension of the repayment period had the effect of lowering the monthly payments on the motorcycle from $486.41 to $225.63.

| Creditor | Collateral Description | Estimated Total Claim | Full Satisfaction Y/N |
|---|---|---|---|
| 1st Adv. | 2003 RV CrossCountry Elite | $115,430.04 | Yes |

The bar date for non-governmental creditors to file proofs of claim was January 8, 2007. 1st Advantage filed separate, timely proofs of claim for the motorcycle loan (Claim No. 3) and the RV loan (Claim No. 8). The latter asserted a secured claim in the amount of $112,528.44. Above the description of the collateral is the notation "To be surrendered," and the value of the collateral is shown as $105,680.00.[3] Attached to the proof of claim is a print-out from the on-line edition of the NADA appraisal guide reporting the wholesale value of a 2003 Coachmen Cross Country Elite as $83,700 and the retail value as $105,680.

Following confirmation of the plan, the debtor took no steps to actually surrender the RV, but 1st Advantage was ultimately able to obtain possession of it in January 2007 and arranged for it to be sold sometime thereafter by Gettysburg Auto Exchange, LLC.[4] The gross sales price was $70,000.00, and the amount applied to the loan, after repossession and storage fees and sales commission, was $69,241.00, leaving a deficiency of $43,287.44. On April 16, 2007, 1st Advantage filed a proof of claim (Claim No. 19) in that amount.

In the interim, the debtor had filed a motion to sell a house he owned in Manassas, Virginia, with the net proceeds, after payment of two deeds of trust against the property, to be used to pay off the plan. The trustee's response stated that $80,900 was needed to

---

[3] On his schedules, the debtor had shown the RV as being worth $101,610.00.

[4] The record does not reflect when the sale actually occurred.

complete the plan. Attached to the trustee's response was an interim account showing payments made and remaining to be made. The line entry for the 1st Advantage RV claim is annotated "TO BE SURRENDERED" and shows $0.00 as approved to be paid. In any event, an order was entered on March 15, 2007, approving the sale and directing that the net proceeds be paid to the chapter 13 trustee, "and, that upon such payment, any wage allotment or plan payment due from the debtor shall cease until further order of the court."

1st Advantage's deficiency claim was filed approximately a month later. The debtor promptly filed an objection to the claim, and on May 31, 2007, 1st Advantage filed a motion to amend the debtor's plan to provide for full payment of the deficiency claim.

Conclusions of Law and Discussion

I.

The claim objection and the motion to amend the plan raise a number of thorny questions. Both the debtor and the creditor agree, however, that the threshold issue is whether 1st Advantage's claim was a so-called "910 claim" subject to the "hanging paragraph" in Section 1325(a) of the Bankruptcy Code. The debtor says that it was, while 1st Advantage says that it was not. Since resolution of that question is controlling on at least some of the others, the court will address it first.

A.

The term "910 claim" is applied to a category of secured claims governed by a provision—commonly called the "hanging paragraph" because it has no paragraph number—added to section 1325(a) of the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). By its

4

terms, the provision applies to the claims of creditors who have "*a purchase money security interest* securing the debt that is the subject of the claim" and either "the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor" or the collateral "consists of any other thing of value" and the debt was incurred during the 1-year period preceding the filing. § 1325(a), Bankruptcy Code (emphasis added). While there is considerable debate among the courts as to the finer points of the hanging paragraph, there is wide agreement that claims governed by it cannot be "crammed down" in a chapter 13 plan to the value of the collateral but must be treated as fully secured. *In re Johnson*, 337 B.R. 269, 273 (Bankr. M.D.N.C. 2006); *In re Trejos*, 352 B.R. 249, 266-67 (Bankr. D. Nev. 2006). Many, but not all, courts have concluded that the corollary must also be true, namely that the debtor can surrender the collateral securing such a claim in full satisfaction of the debt. *In re Kenney*, 2007 WL 1412921, *5 (Bankr. E.D. Va. 2007) (collecting cases and adopting majority view); *but see In re Wright*, 2007 WL 1892502 (7th Cir. 2007) (holding that chapter 13 debtor could not surrender collateral in full satisfaction of 910 claim over creditor's objection).

To even reach that issue, however, the court must first determine whether 1st Advantage's claim falls within the definition of a 910 claim. *In re Ellegood*, 362 B.R. 696, 701 (Bankr. E.D. Va. 2007). The parties do not dispute that the purchase of the RV occurred within 910 days of the filing of the chapter 13 petition; that the RV is a "motor vehicle" within the meaning of the statute; and that the debtor and his wife acquired it for their personal use. What the parties do dispute is whether 1st Advantage had a "purchase money"

5

security interest in the RV.  The debtor says that it did; 1st Advantage says that it did not.  That the original loan was made to purchase the RV is conceded by both parties.  The question is whether the purchase-money character of the loan was lost when it was refinanced a year later and a portion of the new loan used to bring the motorcycle loan current.

Although the hanging paragraph itself is a recent enactment, the term "purchase-money security interest" has a long pedigree, appearing not only in the Uniform Commercial Code but in at least one other section of the Bankruptcy Code dealing with the ability of the debtor to avoid certain types of liens in exempt property.  UCC § 9-103; § 522(f), Bankruptcy Code.  As a result, there is a considerable body of case law addressing the conditions that must be satisfied in order for a creditor to have a purchase money security interest in bankruptcy.

Under the Uniform Commercial Code, a security interest qualifies as a purchase money security interest when it secures an obligation to a lender who has advanced funds to enable the debtor to acquire rights in, or the use of, the collateral, and the funds are in fact so used.  Va. Code Ann. § 8.9A-103(a) and (b).  If the original loan has been refinanced, the Courts of Appeal are split as to whether to apply the transformation rule or the dual status rule.  *In re Short*, 170 B.R. 128, 132-133 (Bankr. S.D. Ill. 1994).

Courts in the First, Fourth, Sixth, Eighth, Ninth, and Eleventh Circuits follow the transformation rule, which states that a purchase money security interest is automatically transformed into a non-purchase money interest when the proceeds of a refinanced loan are used to satisfy the original loan.  *In re Gillie*, 96 B.R. 689, 691-92 (Bankr. N.D. Tex. 1989);

*Matthews v. Transamerica Fin. Serv. (In re Matthews)*, 724 F.2d 798, 800-01 (9th Cir. 1984) (holding that the refinance of a loan to purchase household goods destroyed the purchase money character because the proceeds from the second loan were not used to purchase the collateral itself); *Dominion Bank of the Cumberland v. Nuckolls (In re Nuckolls)*, 780 F.2d 408, 413 (4th Cir. 1985) (holding that bank's refinance of original loans used in part to purchase restaurant equipment extinguished the purchase money character of the debt); *Rosen v. Assoc. Fin. Serv. (In re Rosen)*, 17 B.R. 436 (D.S.C. 1982) (holding that the purchase money character of the original security interest was destroyed when creditor made new loan that paid first loan in total and made premium payments on various insurance policies); *In re Ward*, 14 B.R. 549 (S.D. Ga. 1981); *In re Ellegood*, 362 B.R. at 698 (holding that purchase-money character was lost when new lender refinanced existing loan), *In re Hobdy*, 18 B.R. 70 (Bankr. W.D. Ky. 1982) (execution of new retail installment sales contract for household good was a novation of earlier contract and extinguished purchase-money character of security interest); *In re Kelley*, 17 B.R. 770 (Bankr. E.D. Tenn. 1982) (purchase-money character of security interest in household goods lost when three accounts were consolidated into new account), *In re Jones*, 5 B.R. 655 (Bankr. M.D.N.C. 1980) (purchase money character of security interest in garden tractor was lost when note was refinanced and new sums were advanced).

Courts in the Third, Eighth, Ninth, and Tenth Circuits, by contrast, have followed the dual status rule, which allows a security interest to have both the status of a purchase money security interest to the extent that it is secured by collateral purchased with loan proceeds, and the status of a general security interest, to the extent that the collateral secures

obligations unrelated to its purchase. *In re Gillie*, 96 B.R. at 692; *In re Pan Am Corp.*, 124 B.R. 960, 971 (Bankr. S.D.N.Y. 1991); *Billings v. AVCO Colo. Indus. Bank (In re Billings)*, 838 F.2d 405 (10th Cir. 1988); *Geist v. Converse County Bank (In re Geist)*, 79 B.R. 939 (D. Wyo. 1987); *Davis v. Empris Bank (In re Jackson)*, 358 B.R. 412 (Bankr. D. Kan. 2007) (finding that when subsequent note merely revised the method for payment and distributed no additional funds to the debtor, the lender's purchase money security interest in the debtor's mobile home did not lapse as a result of the refinance), *In re Express Air, Inc.*, 136 B.R. 328 (Bankr. D. Mass. 1992) (holding that purchase-money character of security interest in aircraft equipment was not lost by refinance).

Subsequent to the Fourth Circuit's decision in *Nuckolls*, Virginia has adopted amendments to Article 9 of the UCC that adopt the Dual Status Rule for *non*-consumer transactions. Va. Code Ann. § 8A-903(f), Official Comment ¶ 7(a). For consumer transactions, however, the statute has a savings clause that expressly "leave[s] to the court the determination of the proper rules in consumer-goods transactions." Va. Code Ann. § 8A-903(h). According to the Official Comment, this language "leaves the court free to continue to apply established approaches to [consumer-goods] transactions," and the comment further notes,

> [D]ecisions under Bankruptcy Code Section 522(f) have applied both the dual status and the transformation rules. The Bankruptcy Code does not expressly adopt the state law definition of "purchase-money security interest." Where federal law does not defer to this Article, this Article does not, and could not, determine a question of federal law.

Official Comment ¶ 8 to UCC §9-103. Accordingly, the Fourth Circuit decision in *Nuckolls* remains good law in the consumer-goods context and compels a determination that the

purchase-money character of 1st Advantage's security interest was lost when the original loan was refinanced and a portion of the proceeds used to bring a separate loan current. In *Nuckolls,* the debtors had received two loans from a bank, one for $2,500 and the other for $3,500, the proceeds of which were used to purchase equipment and inventory for their business. Some months later, the bank made another loan in the amount of $7,094, which was used to pay off the two earlier loans and provide $1,000 of cash. The debtors filed bankruptcy, claimed the equipment exempt under the Virginia homestead exemption, Va. Code Ann. § 34-4, and sought to avoid the bank's security interest under § 522(f), Bankruptcy Code, on the ground that it impaired the exemption. By its terms, the Virginia homestead exemption did not extend to "any demand . . . [f]or the purchase price of such property." The Fourth Circuit rejected the bank's argument that the homestead exemption could not be claimed because its loan was "indirectly" used to purchase the equipment. As the court explained:

> The proceeds of the loan at issue here were not used to purchase the equipment. The proceeds repaid outstanding obligations and provided an additional cash advance to the debtors. . . . [T]he instant record contains no suggestion that the vendor of the restaurant equipment failed to receive the purchase price. The Bank is not pursuing an action "[f]or the purchase price" of its collateral, so it is not entitled to the protection of section 34-5(1).

*Nuckolls*, 790 F.2d at 411. As in *Nuckolls*, there is no suggestion in the present case that the vendor of the RV failed to receive the purchase price. Additionally, the proceeds of the loan that 1st Advantage currently has on its books were not used to pay the vendor but to pay off an earlier loan and to bring a different loan current. For that reason, the court concludes that 1st Advantage does not have a purchase-money security interest. In the absence of a purchase-money security interest, 1st Advantage's claim is not a "910 claim," and the

9

"hanging paragraph" therefore provides no authority for the debtor to surrender the RV in full satisfaction of the debt.

B.

The debtor does not suggest any authority other than the hanging paragraph that would allow surrender of collateral in full satisfaction of a secured creditor's claim when the collateral is worth less than the outstanding balance on the loan. The fact remains, however, that 1st Advantage did not object to confirmation and did not take an appeal from the confirmation order. The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan. § 1327(a), Bankruptcy Code. The burden is on a creditor to object to a plan that contains objectionable or ambiguous terms; otherwise, the creditor assumes the risk that it will be bound by them. *In re Haynes*, 107 B.R. 83, 86 (Bankr. E.D. Va. 1989) (chapter 13 plan with no provision for post-petition interest on secured claim); *In re Szostek*, 886 F.2d 1405, 1408 (3rd Cir. 1989) (holding that confirmation could not be revoked simply because chapter 13 plan did not pay interest on secured claims and explaining, "[A]lthough prior to confirmation the bankruptcy court and trustee do have a responsibility to verify that a Chapter 13 plan complies with the Bankruptcy Code provisions, after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code."); *Barry v. BA Properties, Inc. (In re Barry)*, 201 B.R. 820, 823 (C.D. Cal. 1996) ("Once confirmation occurs, the creditor may not raise any issue that it could have raised before confirmation."); *In re Rincon*, 133 B.R. 594, 598 (Bankr. N.D. Tex.

1991) (modified chapter 13 plan that provided for wrecked automobile to be "surrendered for value" limited deficiency claim to amount owed above "value" stated in plan even though insurance paid less than that amount). *See also Trulis v. Barton (In re Barton)*, 107 F.3d 685, 691 (9th Cir. 1995) (chapter 11 plan releasing third parties); *Republic Supply Co. v. Shoaf (In re Republic)*, 815 F.2d 1046 (5th Cir. 1987) (chapter 11 plan releasing guarantor). Furthermore, once a plan is confirmed, a creditor is limited to those rights that are provided by the plan. *In re Talbot*, 124 F.3d 1201, 1209 & n.10 (10th Cir. 1997); *In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993) (holding that mortgage holder, even though over-secured, was not entitled to post-petition interest when confirmed chapter 13 plan provided for payment solely of principal, and stating, "As a general rule, the failure to raise an 'objection at the confirmation hearing or to appeal from the order of confirmation should preclude . . . attack on the plan or any provision therein as illegal in a subsequent proceeding'") (citing *In re Gregory*, 705 F.2d 1118, 1121 (9th Cir. 1983)); *I.R.S. v. Norton (In re Norton)*, 717 F.2d 767, 774 (3d Cir. 1983) (holding that where payment schedule in confirmed chapter 13 plan fully paid IRS claim, IRS would not be allowed to retain tax refund as additional security).

To be sure, in the Fourth Circuit the binding effect of confirmation is qualified by the requirement that creditors be given clear notice before a plan can take away certain types of rights. *See Cen-Pen Corp. v. Hanson (In re Hanson)*, 58 F.3d 89 (4th Cir. 1995) (confirmation of chapter 13 plan that failed to treat creditor's claim as secured did not extinguish the creditor's lien in the absence of a separate adversary proceeding for that purpose); *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160 (4th Cir. 1993) (bifurcation of secured creditor's claim under § 506, Bankruptcy Code, requires more than disclosure in the plan; the creditor must be

notified that a hearing is going to be held and that the interest of the creditor may be affected.); *Deutchman v. IRS (In re Deutchman)*, 192 F.3d 457 (4th Cir. 1999) (completion of payments under chapter 13 plan that understated IRS secured claim did not extinguish IRS's lien on the debtor's property); *Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296 (4th Cir. 2002) (confirmation of chapter 13 plan providing that interest would not accrue post-petition on student loan did not have preclusive effect, as any discharge of liability on a student loan must be obtained through adversary proceeding). The plan provision at issue in this case, however, does not impair the creditor's right to enforce its lien against the collateral, nor does it result in discharge of an otherwise nondischargeable obligation. Accordingly, the special due process concerns articulated in *Cen-Pen, Linkous, Deutchman,* and *Banks* do not apply to limit the otherwise binding effect of plan confirmation on unauthorized plan provisions, at least when the plan itself is clear and the bankruptcy rules would not otherwise require the bringing of an adversary proceeding.

C.

The general rule is that ambiguous bankruptcy plan provisions are construed so as to comport with rather than contravene express provisions of the Bankruptcy Code. *In re Forklift LP Corp.,* 363 B.R. 388, 398 (Bankr. D. Del. 2007)*; In re Jankins*, 184 B.R. 488, 492 (Bankr. E.D. Va. 1995); *see also Miller v. United States (In re Miller)*, 253 B.R. 455, 455 (Bankr. N.D. Cal. 2000).[5] The threshold question, then, is whether the plan treatment of 1st Advantage's

---

[5] The plan in this case conforms to the standard form of chapter 13 plan and related motions required in this district. LBR 3015-2(A) and Ex. 1. Accordingly, the usual rule of construction that ambiguities in a chapter 13 plan are construed against the debtor as the drafter of the plan would not apply, since the court, not the debtor, drafted the language at

(continued...)

claim is ambiguous. A provision of a plan is ambiguous if it is susceptible to two reasonable interpretations. The debtor, not surprisingly, contends that the confirmed plan in this case could hardly be less ambiguous: directly below the heading "Full Satisfaction Y/N" in the section providing for the surrender of the RV is the word "Yes." The words "full satisfaction," the debtor asserts, could only have one meaning, namely, full satisfaction of the debt. 1st Advantage does not seriously argue that the words could have any other meaning, but points to other, seemingly contradictory, language within the same section of the plan, namely the sentence, "To the extent that the collateral does not satisfy the claim, *any timely filed deficiency claim to which the creditor is entitled* shall be paid as a nonpriority unsecured claim" (emphasis added). Of course, even under the quoted language, it is only a deficiency "*to which the creditor is entitled*" that gives rise to an allowed deficiency claim. Almost by definition a surrender in "full satisfaction" means that the creditor is not "entitled" to a deficiency claim. It is true that the phrase "to which the creditor is entitled" could be read more narrowly to exclude a deficiency claim only if a deficiency would not be permitted under non-bankruptcy law. But such an interpretation would require that the sentence be read in isolation, rather than as part of a whole. This is not a plan, it must be stressed, in which the intent to surrender in full satisfaction is buried deep within boilerplate. Both the tabular format and the prominent typographical placement of the "Yes" response underneath the heading "Full Satisfaction Y/N" should have

---

[5](...continued)
issue in this case. That being said, the requirement to use the approved form of plan does not preclude the debtor from deleting inapplicable language provided the deletion is apparent, and a careful practitioner might consider striking through the sentence beginning "To the extent that the collateral does not satisfy the claim . . . " in those instances when surrender is proposed in full satisfaction of the claim.

put 1st Advantage on notice of the debtor's intention—or at the very least should have raised a red flag and a duty to inquire further. Having failed to do so, 1st Advantage cannot justifiably complain that the plan was misleading with respect to the treatment of its claim. Since it did not object to confirmation of the plan or appeal the confirmation order, it is bound by the provision for "full surrender" and is precluded from asserting a deficiency claim *unless* cause exists to modify the plan—a topic to which the court now turns.

II.

1st Advantage's motion to modify the plan is brought under § 1329 of the Bankruptcy Code, which provides, in relevant part:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
>   (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
>   (2) extend or reduce the time for such payments; [or]
>
>   (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan[.]

§ 1325(a), Bankruptcy Code. *See Arnold v. Weast (In re Arnold)*, 869 F.2d 240 (4th Cir. 1989) (bankruptcy court did not err in requiring increased monthly payment and extending plan period on creditor's motion after unanticipated substantial increase in debtor's income). Courts have divided as to whether a threshold showing of a change in financial circumstances is required before a modification of a plan is allowed under § 1329(a). *See In re Klus*, 173 B.R. 51, 57-58 (Bankr. D. Conn. 1994) (noting that some courts require no showing of a change in financial circumstances before modification is permitted while others reason that the doctrine of *res*

*judicata* limits the permissible grounds for modification). The Fourth Circuit, however, has plainly held that a change in financial circumstances is required. *In re Murphy*, 474 F.3d 143, 150 (4th Cir. 2007) ("Simply stated, per *In re Arnold*, when a bankruptcy court is faced with a motion for modification pursuant to §§ 1329(a)(1) or (a)(2), the bankruptcy court must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition.") As a leading commentator notes:

> [Section 1329(a)] is intended to carry the ability-to-pay standard forward to any modifications of the plan, allowing upward or downward adjustment of plan payments in response to changes in the debtor's circumstances that substantially affect the ability to make future payments. Consequently, a secured creditor has no right to move for modification of a plan. ...
>
> In view of this congressional purpose, the right of the trustee or the holder of an unsecured claim should be limited to situations in which there has been an unanticipated substantial change in the debtor's income or expenses that was not anticipated at the time of the confirmation hearing. *As to other matters, the confirmation order should be considered res judicata insofar as the matters do not relate to a change in the debtor's ability to pay*[.]

8 Collier on Bankr. ¶ 1329.03, at 1329-5 & 6 (Lawrence P. King, Ed., 15th ed. rev. 1997) (footnotes omitted) (emphasis added). Here, there has been no showing of a change in the debtor's financial circumstances. Rather, the creditor is simply seeking a better treatment of its claim than the treatment provided by the plan. In this respect, the present case is similar to *In re Fowler*, 1998 WL 748643 (Bankr. E.D. Va., Oct. 27, 1997). In that case a chapter 13 plan was confirmed stating that an "[a]utomobile note with American Investment Bank will be paid outside plan by co-signor." The co-signor later defaulted, and the creditor, after obtaining relief from the automatic stay and selling the vehicle, filed a belated "objection to confirmation"—which the court treated as a motion under § 1329(a) — seeking to have its deficiency claim paid through the plan. This court, after reviewing the relevant case law, particularly the Fourth

15

Circuit's opinion in *Arnold*, held that plan modification under § 1329(a) was limited to circumstances affecting the debtor's ability to pay and could not be used to modify the treatment of a secured creditor's claim.

In *Fowler*, this court did note the potential availability of relief under Federal Rule of Bankruptcy Procedure 9024, which allows a bankruptcy court to grant relief from a final order or judgment for certain specified reasons. In *Fowler*, however, the "objection to confirmation" was filed some seven months after the plan had been confirmed, and the court held that the 180-day time limitation in § 1330, Bankruptcy Code, would bar relief under Rule 9024. In the present case, by contrast, the motion to modify the plan was filed 178 days after entry of the confirmation order, and the issue is therefore squarely presented whether Rule 9024 can be used to modify the plan treatment of a creditor's claim.

Although Rule 9024 states that Rule 60, Federal Rules of Civil Procedure, applies in bankruptcy cases, it sets forth three express limitations, one of which is that "a complaint to revoke an order confirming a plan may be filed only within the time allowed by . . . § 1330." Fed. R. Bankr. P. 9024(3). Section 1330 in turn provides that "[o]n request of a party in interest at any time *within 180 days* after the date of the entry of an order of confirmation . . ., and after notice and a hearing, the court may revoke such order *if such order was procured by fraud*." § 1330(a), Bankruptcy Code (emphasis added). The question that arises is whether Rule 9024 and Section 1330, read together, limit the grounds for relief from a confirmation order solely to fraud in the procurement of the order. That issue was addressed in *In re Joseph*, 1998 WL 939694 (Bankr. E.D. Va., Nov. 4, 1998), in which this court held that

16

although Section 1330 limits the *time* in which a motion for relief from a confirmation order might be brought, it did not necessarily limit the *grounds*:

> To be sure, to allow attacks on a confirmation order under Rule 9024 on grounds other than the sole ground stated in § 1330(a) would arguably make the statute something of a nullity. At the same time, it is difficult to believe that Congress, in drafting § 1330, or the Supreme Court, in adopting Rule 9024, intended to prevent bankruptcy courts from granting relief from confirmation orders for any of the various weighty reasons for which a federal court may set aside a final judgment in a civil action. While the matter is not wholly free from doubt, the court concludes that Rule 9024 may be used to grant relief from a confirmation order on grounds other than fraud.

*Id.* at *6. Another judge of this court, however, has recently held that Section 1330 serves not only as a time limitation regarding actions to revoke confirmation but as a substantive limitation as well, thereby barring revocation of confirmation on the basis of grounds (other than fraud) that would be available under Rule 9024. *Johnson v. Stemple (In re Stemple)*, 361 B.R. 778 (Bankr. E.D. Va. 2007). Even that decision, however, acknowledges that Rule 9024 might be used to grant relief from the confirmation order that falls short of revocation. *Id.* at 801.

In the present case, there is no evidence that confirmation of the plan was procured by fraud. The only other ground for relief under Rule 9024 that arguably applies to the facts of this case is "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The court accepts the testimony of 1st Advantage's witness that in reviewing the plan, she focused on the deficiency claim language rather than the "full satisfaction" language, and that had she read further and realized what the debtor was attempting to accomplish, 1st Advantage would have objected to confirmation. There is no question that had 1st Advantage filed a timely objection. the court could not have confirmed a plan that

17

eliminated its deficiency claim.  *In re Ellegood*, 362 B.R. at 696.  Thus, relief from the confirmation order to the limited extent of allowing the filing of a deficiency claim might be appropriate if it could be done without prejudice to other creditors.  The problem in this case, very simply, is that the court cannot allow the deficiency claim without seriously reducing the dividend the other creditors will receive.

The standard form of chapter 13 plan in this district is a "pot" plan rather than a percentage plan.  *In re Witkowski*, 16 F.3d 739, 741 & n. 11 (7th Cir. 1994) (explaining difference between pot plan and percentage plan).  That is, unsecured creditors, rather than being promised payment of a fixed percentage of their allowed claims, share pro rata in the "pot" that remains after payment of priority and secured claims.  Chapter 13 Plan and Related Motions, Ex. 1 to Local Bankr. Rules, § 4(A) ("Allowed non-priority unsecured claims shall be paid pro rata from any distribution remaining after disbursement to allowed secured and priority claims.")  It is true that the plan includes an estimate of the percentage that unsecured creditors will receive on their claims, but the estimate is just that, and not a guarantee.  At the same time, while unsecured creditors always run the risk that claims may ultimately be allowed in a higher amount than anticipated—and thus, that they may receive less than the advertised percentage—at some point a distribution that is markedly lower than creditors had been led to expect would raise a serious question as to whether creditors were misled into not objecting to confirmation of a plan.

In this case, the estimated distribution on unsecured claims was shown as 100 cents on the dollar.  This estimate was predicated on not having to pay a deficiency claim on the surrendered RV.  Had unsecured creditors known that the amount that the debtor was

committing to pay into the plan was insufficient to pay their claims at 100 cents on the dollar, they might well have objected to confirmation on the ground that the plan did not pay what they would have received in a chapter 7 liquidation, as required by § 1325(a)(4), Bankruptcy Code, inasmuch as the debtor's schedules reflect $339,000 in equity in his residence.  Assuming that the trustee has in fact received the $80,900 from the sale of the Manassas property, approximately $36,380 will remain after payment of the secured and priority claims (including the trustee's 10 percent commission) that are being paid through the plan.  This is more than sufficient to pay the $33,253.65 in presently-allowed unsecured claims at 100 cents on the dollar.  Adding in 1st Advantage's $43,287.44 deficiency claim, however, would swell the pool of unsecured claims to $79,668.32 and reduce the dividend on them to approximately 42 cents on the dollar.  Even for a pot plan, this represents an unacceptable variance from what creditors were led to expect.  Because relief could not be granted allowing payment of 1st Advantage's deficiency claim without substantial prejudice to the other unsecured creditors, and since the position 1st Advantage now finds itself in is, at bottom, the result of its own negligence in not carefully reading the plan, relief under Rule 9024 is not appropriate even if otherwise permitted.

III.

In summary, although 1st Advantage did not have a purchase money security interest in the RV, and its claim was therefore not subject to the "hanging paragraph" of Section 1325(a), its failure to object to confirmation of the plan or to appeal the confirmation order means that it is bound by the treatment—surrender of the collateral in full satisfaction of the claim—set forth in the plan.  Since there has been no substantial, unanticipated change in the

debtor's financial circumstances, modification of the plan to pay the deficiency claim is not available under § 1329(a). Finally, even assuming that relief from the confirmation order could be decreed under Rule 9024 on the ground of mistake, inadvertence, or excusable neglect, such relief is not appropriate under the circumstances of this case. A separate order will therefore be entered sustaining the objection to the deficiency claim and denying the motion to modify the plan.

Date: _____        _____
                                    Stephen S. Mitchell
Alexandria, Virginia                United States Bankruptcy Judge

Copies to:

Robert K. Huddle
4483 Pinecrest Lane
Catlett, VA 20119
Debtor

Richard G. Hall, Esquire
4208 Evergreen Lane, Suite 234
Annandale, VA 22003
Counsel for the debtor

Ruth A. Gibson, Attorney
P.O. Box 115
Lanexa, VA 23089
Counsel for 1st Advantage FCU

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA 22314
Chapter 13 trustee